[S. F. No. 3782.  Department One.—July 13, 1904.]

In the Matter of the Estate of JOHN PFORR, Deceased. MARGARETHA THORNAGEL, Appellant, v. ANNA PFORR et al., Respondents.

ESTATES OF DECEASED PERSONS—PROBATE OF WILL—VALIDITY OF PROVISIONS.—A will regular in form and properly executed cannot be denied probate on the ground that some of its provisions are invalid. The probate merely determines the validity of its execution; and the will cannot be admitted to probate in part and denied probate as to the remainder.  The validity of any of its provisions will be determined only when effect is sought to be given to them.

ID.—EXPRESS TRUST NOT CREATED—POWER OF ALIENATION NOT SUSPENDED—SALE IN COURSE OF ADMINISTRATION—POWER OF COURT.—

Where the will does not purport to devise the land to the executors in trust, but merely directs them as executors to have the property sold at the expiration of two years after his death, and to distribute the proceeds among designated beneficiaries, to whom the estate is bequeathed, and to maintain the estate for two years, the will does not create an express trust in the executors, nor suspend the power of alienation during that period. The sale must be made by the executors in the course of administration; and the court may at any time order a sale, if necessary to pay creditors, or for the advantage of those interested in the estate, or when they consent thereto.

ID.—NUGATORY DIRECTIONS.—To the extent that the directions to the executors contained in the will are inconsistent with law, they are nugatory.

ID.—TRUST CHARACTER OF EXECUTORS.—Executors, as such, are not trustees of an express trust, and the authority conferred upon them, as such, by the directions of the will creates only such a trust as pertains to the office of an executor.

ID.—SALE BY EXECUTORS—CONFIRMATION BY COURT—DEVISE IN TRUST. —All sales made by executors, as such, under the directions of a will must be reported to the court, and will be ineffectual without confirmation by the court. But if a devise were made to them in trust, to make sale and distribute the proceeds, the land could be sold by them without the necessity of a report of the sale and confirmation thereof.

ID.—SUSPENSION OF POWER OF ALIENATION—DELAY IN RELATION TO SALE.—Section 715 of the Civil Code only forbids a suspension of the *power* of alienation, and a provision for the exercise of that power at a future time is not within' its provisions, unless such exercise is itself suspended beyond the period therein limited. The delay incident to the execution of a power of sale by conversion of the land into money, or in procuring an order of court for the sale, or for its confirmation, does not operate as a suspension of the power of alienation.

ID.—EQUITABLE CONVERSION OF LAND INTO MONEY—CONSTRUCTION OF WILL — "DESIRE" OF TESTATOR — DEVISE AND BEQUEST TO BENE- FICIARIES.—The provisions of the will manifesting the intention of the testator for the sale of the real property and the distribution of the net proceeds to beneficiaries named operates as an equitable conversion of the real estate into personalty. This result is not overcome by reason of the testator having used the word "desire" instead of "direct"; but that word must be construed as a command when addressed to his executors. The testator's use in different clauses of the will of the words: "I give, bequeath, and devise" to each of the beneficiaries "one-sixth part of my estate," is subordinate to his previous direction that the real property be sold and the net proceeds distributed to them, and must yield thereto.

ID.;— RECONVERSION — ELECTION TO TAKE REALTY —,UNION OF BENE-
FICIARIES ESSENTIAL—PETITION BY ONE BENEFICIARY—PARTIAL DIS-
TRIBUTION.—The beneficiaries may accomplish a reconversion of
the personalty into realty by election to take the land instead of
the proceeds before a sale is had; but a united election of all the
beneficiaries is essential to accomplish that result. One beneficiary
cannot effect it; and a petition of such beneficiary for partial
distribution of her share of the estate was properly denied.

APPEAL from orders of the Superior Court of the City
and County of San Francisco admitting a will to probate and
from an order denying a petition for partial distribution.
J. V. Coffey, Judge.

The facts are stated in the opinion.

J. J. Burt, for Appellant.

The will containing a direction to sell and convey the fee
necessarily gave the fee in trust. (*Crane* v. *Bolls,* 49 N. J.
Eq. 373; *Webster* v. *Thorndyke,* 11 Wash. 390, and cases cited;
*Blackburn* v. *Webb,* 133 Cal. 420; 2 Pomeroy's Equity Juris-
prudence, secs. 1009, 1010; 1011 and notes; *Janes* v. *Throck-
morton,* 57 Cal. 368; *Adams* v. *Lambard,* 80 Cal. 426; *Luco*
v. *De Toro,* 91 Cal. 417.) The will was void as suspending
the power of alienation for a definite period of two years.
(Civ. Code, sec. 715; *Estate of Walkerly,* 108 Cal. 637;[1] *Es-
tate of Hendy,* 118 Cal. 656; *Estate of Cavarly,* 119 Cal.
406; *Crew* v. *Pratt,* 119 Cal. 139; *Haynes* v. *Sherman,* 117
N. Y. 433.) Probate of part only of a properly attested will
may be decreed, while the rest is rejected. (Schouler on
Wills, sec. 219, and cases cited.) One may die testate as to
a portion of his estate and intestate as to the residue. (*Estate
of Young,* 123 Cal. 337; Schouler on Wills, secs. 294, 298;
*In re Welsh,* 1 Redf. (N. Y.) 238; *Estate of Murphy,* 104
Cal. 567; *Coffman* v. *Coffman,* 85 Va. 459.[2])

Pringle & Pringle, for Anna Pforr and Max Waizman, Re-
spondents.

The will creates no fee in trust under our law. (*Bennalack*
v. *Richards,* 116 Cal. 405, 408.) Nor does it suspend the
power of alienation. (*Toland* v. *Toland,* 123 Cal. 140.)

---

[1] 49 Am. St. Rep. 97, and note.      [2] 17 Am. St. Rep. 69.

HARRISON, C.—The above-named decedent left a last will and testament in which he appointed the respondents Anna Pforr and Max Waizman as his executors, and disposed of his estate as follows:—

"A. First. I give and bequeath to my said niece, Anna Pforr, all household furniture, books, and pictures which I may possess at the time of my demise.

"A. Second. I desire and direct that my executrix and executor shall take in charge all my property, real and personal (except that which I have hereinbefore bequeathed to Anna Pforr), and to collect all the rent and other income from the same, and to defray all expenses thereon, including interest on mortgages, and to renew mortgages and to execute new mortgages thereon when necessary for the maintenance of the same for a term of two years from the date of my demise.

"A. Third. I desire that my executrix and executor, at the expiration of two years from the date of my demise, shall have the property sold at public auction or otherwise, and after paying all indebtedness standing against it, to divide the net proceeds of such sale into six equal parts or divisions, and to distribute the same, share and share alike, to my heirs and devisees as hereinafter set forth.

"B. First. I give, bequeath and devise to my niece Anna Pforr, of this city and county of San Francisco, California, one-sixth part of my estate.

"B. Second," etc. (Giving in similar terms an undivided sixth of his estate to each of his four surviving brothers and sisters and an undivided sixth to the children of a deceased sister.)

The appellant herein is one of the surviving sisters of the deceased and is also one of the beneficiaries under the above third item of his will. The above-named Anna Pforr is the daughter of Christian Pforr, one of the surviving brothers of the deceased. The deceased was unmarried, and left two brothers and two sisters and the children of a deceased sister as his heirs at law. When the will was presented to the superior court its probate was contested by the appellant upon the ground that, except as to the personal property bequeathed to Anna Pforr, it is invalid, in that by its terms the power of alienation of the real estate is suspend-

ed in contravention of the provisions of section 715 of the Civil Code. The court overruled this objection and admitted the will to probate. From this order the contestant has appealed.

After the expiration of four months from the issuance of letters testamentary the appellant presented to the court her petition for distribution to her of the share of the estate to which she is entitled, setting forth therein the condition of the estate and alleging that the disposition thereof made by the testator is void, and that at his death his entire estate vested in his heirs at law; that with the exception of the personal property bequeathed to Anna Pforr she is entitled to have distributed to her an undivided fifth of the estate, and that such distribution could be made without loss to the creditors of the estate. Upon the hearing of her petition the court held that the will was valid and that the property of the deceased vested upon his death in the devisees under his will in accordance with its provisions, and that the appellant is entitled to one-sixth part thereof, except his household furniture, books, and pictures, and denied her petition. From this order also she has appealed.

1. An instrument testamentary in character and issued in the form required for a will cannot be denied probate upon the ground that some of its provisions are invalid or contrary to the provisions of law. The probate of the instrument merely determines the validity of its execution. The sufficiency or invalidity of its provisions will be determined when effect is sought to be given to them. The statute makes no provision by which a portion of such an instrument can be admitted to probate and probate denied to the remainder. (*Estate of Cobb*, 49 Cal. 599; *Estate of Murphy*, 104 Cal. 554; *Toland* v. *Toland*, 123 Cal. 140.)

2. The will in question does not create an express trust in real property. The testator has not devised the land to his executors in trust for the purposes of his will, but has merely given them certain directions to be observed in carrying out its provisions. To the extent that these directions are inconsistent with law they are nugatory. Executors, as such, are not trustees of an express trust (Civ. Code, sec. 2250); and the authority which the testator herein has given to his executors creates only such a trust as pertains to the office

of executor. (*Bennalack* v. *Richards,* 116 Cal. 405.) He has not conferred upon them the power to make any sale or disposition of his estate, other than that they "shall have the property sold" at the expiration of two years after his death, and shall distribute the proceeds among his designated beneficiaries. The sale which is thus directed is to be made by them as executors of his will and as a part of their administration of the estate, and not as the trustees of an express trust, and will be ineffective without a confirmation by the court (Code Civ. Proc., secs. 1517, 1561); whereas, if the land had been devised to them in trust to make the sale and distribute the proceeds, it could be sold by them as such trustees without the necessity of reporting the sale or having it confirmed by the court. (*Estate of Delany,* 49 Cal. 76; *Estate of Williams,* 92 Cal. 183.) Neither will a mortgage by them of the property of the estate be effective unless made by an order of the court under sections 1577-1579 of the Code of Civil Procedure. Otherwise, they would be able to transfer the estate without the approval of the court, and thus do indirectly what they are forbidden to do directly, since the right to mortgage includes a right in the mortgagee to have a sale of the land in satisfaction of the obligation for which the mortgage was given.

Neither is there any provision in the will by which the power of alienation is suspended or which purports to prevent an absolute interest in possession from being at any time conveyed. The direction to the executors to collect the rents and maintain the estate for two years is not a restraint upon its alienation during that period, nor is the provision for its sale at the expiration of two years a prohibition against its sale prior to that time. "A power of sale to be exercised after a definite term is not necessarily an illegal restraint upon alienation. It does not necessarily suspend the absolute power of alienation." (*Garvey* v. *McDevitt,* 72 N. Y. 563; *Buchanan* v. *Tebbetts,* 69 Hun, 81.) The testator has not forbidden the alienation of his estate during any fixed period of time, but in the direction to his executors he has fixed a limit after which the beneficiaries may enforce its sale. It was not within his power to deprive the superior court of its power to direct a sale of his estate at any time, if necessary for the purposes of administration, nor is his will susceptible

of such construction. So long as the administration of the
estate is pending the executors are at all times subject to
the control and direction of the superior court, and that court
may at any time order a sale of the lands, if necessary for
the payment of creditors, or when it will be for the advantage
of those interested in the estate, or when they assent to its
sale. (Code Civ. Proc., sec. 1543.) There is therefore no
point of time at which the beneficiaries under the will may
not unite in a conveyance made at a sale under an order of
the court and thus give to the grantee an absolute interest
in possession of the estate of the testator in the property
conveyed.

The suspension of the power of alienation which is pro-
hibited by the statute is such as arises from the terms of the
instrument by which the estate is created, and not such as
exists outside of that instrument—as a disability of the person
in whom an interest is vested or the delay incident to procuring
an order of court for the sale, or for its confirmation. (*Manice*
v. *Manice,* 43 N. Y. 303; *Robert* v. *Corning,* 89 N. Y. 238;
Chaplin on Suspension of the Power of Alienation, sec. 116.)
"The absolute ownership and power of alienation is not sus-
pended merely because the executor may require a period
of time not measured by lives in which to execute the power
of sale by a conversion of the land into money." (*Deegan* v.
*Wade,* 144 N. Y. 576.) "Section 715 of the Civil Code only
forbids a suspension of the *power* of alienation, and a pro-
vision for the exercise of that power at a future time is not
within its provisions, unless such exercise is itself suspended
beyond the period therein limited." (*Toland* v. *Toland,* 123
Cal. 140.)

The will contains no directions for the accumulation of in-
come, and it is only "directions" for the accumulation of the
income of property that the statute makes void. (Civ. Code,
sec. 723.)

3. The provision for the sale of the property and the dis-
tribution of its proceeds among the six beneficiaries operated
as an equitable conversion of the real estate into personalty.
(Civ. Code, sec. 1338.) This result is not overcome by reason
of the testator having used the word "desire" instead of
"direct" in authorizing the sale. The words "I desire" that
my real estate shall be sold are the equivalent of the words
"I will" that it be sold. (*Appeal of City of Philadelphia,* 112

Pa. St. 470.) While the desire of a testator for the disposal of his estate is a mere request when addressed to his devisee, it is to be construed as a command when addressed to his executor. (*Estate of Marti*, 132 Cal. 666.)

Whether such conversion is effected depends upon the intention of the testator as gathered from the entire provisions of his will. If it is apparent from its terms that it was his will that the estate be sold and the proceeds given to his beneficiaries, an equitable conversion results, even if the direction for the sale is not imperative. (*Dodge* v. *Pond*, 23 N. Y. 69.) "The question of conversion is a question of intention, and the real question is, Did the testator intend his land should be converted into money at all events before distribution?" (*Wurts* v. *Page*, 19 N. J. Eq. 375.) Mr. Pomeroy (Equity Jurisprudence, sec. 1161) says: "In fact the whole result depends upon the intention. If by express language, or by a reasonable construction of all its terms, the instrument shows an intention that the original form of the property shall be changed, then a conversion necessarily takes place."

That the testator intended that his estate should be sold and the proceeds divided among his designated beneficiaries clearly appears from the terms of the will. He directs his executors in the third item thereof to have the property sold and to divide the proceeds of such sale into six equal portions, and to distribute the same to his heirs and devisees "as hereinafter set forth." By these connecting words the provisions in the clauses immediately following, wherein are "set forth" the persons to whom these six parts of the estate are to be distributed, become a part of his direction for the sale of the property, and the form in which he has "set forth" the beneficiaries and repeated his gift cannot be invoked to defeat his direction that the property be sold. The "estate" given to the beneficiaries by these subsequent clauses is the "net proceeds of the sale" which he had previously directed to be made, and the "one-sixth part" thereof given to each is one of the "six equal parts or divisions" into which his executors are directed to divide the said "net proceeds" and distribute to the said beneficiaries. His use in these clauses of the words "I give, bequeath, and devise" to each of the beneficiaries "one-sixth part of my estate" is subordinate to

his direction in the previous part of the same item of the will that the property be sold, and must yield thereto.

The direction that the estate be sold and its proceeds given to certain designated beneficiaries was within the testamentary power of the testator, and as the beneficiaries thereunder are the only persons interested in the estate, the heirs at law, *as such*, are not entitled to have the estate distributed to them. The beneficiaries among whom the proceeds of the sale are to be distributed have no interest in the land, but each of them is by the will vested with a chose in action,—i. e. the right to receive from the executors his share of the proceeds of the sale. (*Harcum* v. *Hudnall*, 14 Gratt. 369.) The testator had the right to determine whether they should receive lands or money from his bounty, and their rights to his estate are measured by the form in which he has given it to them. (*Marsh* v. *Wheeler*, 2 Edw. Ch. 153; *Allen* v. *Watts*, 98 Ala. 384.)

4. Under well-recognized principles of equity the beneficiaries can, however, at any time before such sale, elect to retain the land in lieu of receiving the proceeds of the sale, and thus effect its reconversion into real estate; but as it appears from the appellant's petition for distribution to her that with the exception of personalty appraised at less than two hundred dollars in value the entire estate of deceased consists of real property, such election will be ineffective unless all of them unite therein. (*Bank of Ukiah* v. *Rice*, 143 Cal. 265.) "The direction to sell the land gives to each a right to have it sold and takes away from each one the separate right to reconvert his single share and thus have the sale of a fraction." (*High* v. *Worley*, 33 Ala. 196. See, also, *Harcum* v. *Hudnall*, 14 Gratt. 376; *Baker* v. *Conpenbarger*, 15 Ill. 103.[1]) The appellant alone could not take from the other beneficiaries their right to have the proceeds of a sale of the property, and her petition for a distribution of her share of the estate was therefore ineffective to work a reconversion. Her application for such distribution was therefore properly denied by the superior court.

The orders appealed from should be affirmed.

Chipman, C., concurred.

[1] 58 Am. Dec. 600.

For the reasons given in the foregoing opinion the orders appealed from are affirmed.

Angellotti, J., Shaw, J., Van Dyke, J.

Hearing in Bank denied.